In re MARRIAGE OF MARLA STRAUSS, Petitioner-Appellee, and FRED-ERICK J. STRAUSS, Respondent-Appellant.

Second District   Nos. 2—88—0317, 2—88—0581 cons.

Opinion filed May 25, 1989.

Ralph E. Madsen, of Madsen, Baudin, Stolfi & Sugden, of Crystal Lake, for appellant.

Thomas W. Hunter, of Palatine, for appellee.

JUSTICE DUNN delivered the opinion of the court:

Respondent, Frederick Strauss, filed a petition to restrain his second wife, petitioner Marla Strauss, from initiating any contact with his three children from a prior marriage. The circuit court denied the petition and imposed sanctions against Frederick and his attorney pursuant to section 2—611 of the Code of Civil Procedure (Code) (Ill. Rev. Stat. 1987, ch. 110, par. 2—611). We have consolidated on our own motion Frederick's separate appeals from the order denying the petition and the order imposing sanctions. With regard to the former proceeding, Frederick contends that the trial court erred in the following respects: (1) by requiring him to give notice of the proceeding to certain attorneys who represented the children in the prior divorce and allowing them to participate; (2) by denying his motion for a court-appointed psychologist; (3) by refusing to allow certain testimony concerning Marla's conduct; (4) by refusing to allow his attorney to make offers of proof concerning disallowed testimony; and (5) by ruling that he failed to establish a *prima facie* case for injunctive relief. With regard to the award of sanctions, Frederick contends that this award was against the manifest weight of the evidence and that the award to his minor son, Charles, was improper because Charles was not a party. We affirm the denial of Frederick's petition and dismiss the appeal from the award of sanctions.

The circuit court issued an order on November 7, 1986, dissolving the parties' marriage and reserving other issues for future determination. Six days later, Frederick filed his petition to restrain Marla from initiating contact with Charles, Kevin and Frederick, his three sons from a prior marriage. Over Frederick's objection, the trial court directed him to provide notice of the proceedings to David Stone, who had served as Charles' attorney during the prior divorce, and Richard Jones, who had been guardian *ad litem* for all three children during the earlier divorce. These two attorneys were allowed to participate in the hearing on the petition.

The hearing on the petition commenced on January 20, 1988, with Frederick calling Marla as an adverse witness. Marla testified she left Frederick in December 1985, subsequently returned to his home, left again in May 1986, returned for a few days in July 1986, and left for good later that month. Marla sometimes spoke to the children in church after the final separation, and they went over to her home a few times. She stated that her home was always open to the children. The trial court sustained an objection when Frederick's attorney asked Marla if she had ever discussed with Frederick's first wife, Melody, the possibility of hiring an attorney to regain custody of the chil-

dren. Melody was the mother of the children. Marla admitted that in April 1986, she took the family housekeeper to the location of her new job after the housekeeper quit. Marla also allowed this woman to stay in a vacant house she owned after the woman left the second job.

The trial court continued the hearing until March 3, 1988. The trial court denied Frederick's motion that morning for a court-appointed psychologist to examine the children. Frederick then testified. He stated that when Marla left on December 14, 1985, she was aware that Frederick would be out of town for job-related reasons from December 24 to 26. Marla left anyway and told Frederick to get a baby-sitter. Frederick also stated that the grades of the children began to decline after he and Marla separated and that the children began missing soccer practices and spending time with Marla instead. The trial court sustained the objection of Marla's counsel when Frederick was asked if Marla's contact with the children increased at any time subsequent to the initial separation. The trial court did not permit Frederick's counsel to make an offer of proof concerning this question.

After Frederick rested, Marla's counsel moved for a directed finding. The trial judge granted the motion, stating that no evidence was presented that Marla's contacts with the children had a detrimental effect on them. Marla's attorney and Charles' attorney both filed petitions with the court for attorney fees pursuant to section 2—611 of the Code. The trial court granted the petition following a hearing on May 5, 1988. The court awarded $3,945 to Marla and $1,985 to Charles, with Frederick's attorney, Ralph Madsen, jointly and severally liable for $625 of the award to Charles.

■ It is difficult to perceive any possible prejudice to Frederick from the trial court's actions in requiring Frederick to send notice of the proceedings on his petition to the guardian *ad litem* for the children and to Charles' attorney. The trial court denied the petition because Frederick failed to present a *prima facie* case for injunctive relief, not because of any evidence presented by these attorneys. Furthermore, the trial court's actions were not erroneous. Courts have inherent power to appoint a guardian *ad litem* for minors interested in litigation. (*Pelham v. Griesheimer* (1982), 92 Ill. 2d 13, 24.) If the interests of minors are not adequately represented, it is the duty of the trial court to take such a measure. *Majidi v. Palmer* (1988), 175 Ill. App. 3d 679, 685.

■ In light of the apparent hostility between the parties and the fact that the trial court's ruling on the petition would affect the children, the trial court did not err by permitting representatives of the

children to participate in the hearing. The trial court's exercise of its inherent authority to protect the best interests of the minors by insuring them adequate representation was well within its discretion and did not result in prejudice to Frederick.

■ Frederick complains of several evidentiary rulings made by the trial court but does not cite any authority in his brief in support of his argument that the rulings were erroneous. The appellate court is not a depository in which the appellant may dump his burden of argument and research. (*Williams v. Danley Lumber Co.* (1984), 129 Ill. App. 3d 325.) Failure to cite pertinent authority in support of an issue raised is a violation of Supreme Court Rule 341(e)(7) (113 Ill. 2d R. 341(e)(7)) which results in waiver of the issue on appeal. (*Britt v. Federal Land Bank Association* (1987), 153 Ill. App. 3d 605, 608.) Frederick has waived any objection to the evidentiary rulings of the trial court. Frederick has also failed to cite any authority in support of his contention that his motion for a court-appointed psychologist was erroneously denied and has also waived this argument.

According to Frederick, the trial court erroneously refused to allow him to introduce offers of proof on two occasions after the court sustained objections to questions asked to him by his attorney. One of the questions related to an incident mentioned by Marla in her testimony in which Frederick supposedly called the local police in order to have them watch while he administered corporal punishment to one of the children. The other was whether Marla's contact with the children increased at any point after her initial separation from Frederick.

■ ■ If an offer of proof is necessary, it is error for the trial court to refuse counsel an opportunity to state what he or she proposed to prove through the evidence. (*Blazina v. Blazina* (1976), 42 Ill. App. 3d 159, 166.) Here, we do not believe that offers of proof were necessary because the questions asked would not have produced relevant testimony. Evidence is relevant if it tends to prove a matter in controversy. (*Bullard v. Barnes* (1984), 102 Ill. 2d 505, 519.) The question about the incident in which Frederick supposedly called the police to have them witness him administer corporal punishment is not relevant since Marla's conduct was at issue, not Frederick's. The other question would not have produced relevant evidence since the matter in controversy was whether Marla's contacts with the children were harming them, not whether she increased those contacts at a certain point.

■ Finally, Frederick argues that the trial court erred in determining that he did not establish a *prima facie* case for injunctive relief. Once again, Frederick has failed to cite any authority in support

of this argument and has therefore waived it pursuant to Supreme Court Rule 341(e)(7). In any event, the contention is without merit. An injunction will only be granted if the party seeking it has a certain and clearly ascertained right which needs protection and will suffer irreparable harm if the injunction is not granted. (*Smith Oil Corp. v. Viking Chemical Co.* (1984), 127 Ill. App. 3d 423, 431.) Proof of a speculative possibility of injury is not sufficient. *Smith Oil Corp.*, 127 Ill. App. 3d at 431.

Frederick failed to present any evidence that he or the children were likely to suffer irreparable harm because of the contacts between Marla and the children. Frederick testified that the grades of the children had generally declined since the initial separation of the parties and the children had stopped participating in soccer. It is sheer speculation, however, to assume that these things occurred because of Marla's contacts with the children. Frederick presented no evidence that Marla discouraged the children from doing their school work or participating in soccer.

Frederick contends in his brief that he presented evidence that Marla exhibited a callous disregard for the welfare of the children on several occasions. The first was when she left him on December 14, 1985, forcing Frederick to hire a baby-sitter to care for the children because he was out of town for job-related reasons from December 24 to 26. We note that Marla had no legal duty to care for the children. With scant evidence in the record of the circumstances surrounding Marla's December 14 departure, it cannot be said from the evidence presented that she exhibited a callous disregard for the children solely because she departed from a failing marriage and forced her husband to hire a baby-sitter on short notice. Another alleged example of Marla's callous disregard for the children was the fact that Marla transported the housekeeper/baby-sitter to her new job after she quit. Since the baby-sitter was leaving anyway, it is difficult to imagine how Marla harmed the children by giving her a ride to her new job. There is no evidence Marla encouraged the woman to quit.

■ Frederick also testified that Marla refused to allow him to borrow a van which had been temporarily awarded to her by the trial court. Since the trial court awarded two vehicles to Frederick, it is difficult to imagine how Marla was exhibiting a disregard for the children by refusing to lend him the van. The trial court correctly ruled that Frederick did not establish a *prima facie* case for injunctive relief because there was no evidence that Marla's contacts with the children were likely to cause irreparable harm to them or to Frederick.

With regard to the appeal from the order imposing sanctions

against Frederick pursuant to section 2—611 of the Code, said appeal must be dismissed. The foregoing statute was amended, effective November 25, 1986, and now states in relevant part as follows:

"All proceedings under this Section shall be within, and part of the civil action in which the pleading, motion or other paper referred to herein has been filed, and no violation or alleged violation of this Section shall give rise to a separate cause of action, or another cause of action within the civil action in question, by, on behalf of or against any party to the civil action in question, and by, on behalf of or against any attorney or insurance company involved in the civil action in question." Ill. Rev. Stat. 1987, ch. 110, par. 2—611.

██ It is clear from the above language that section 2—611 claims must be considered part of the civil action which gave rise to the claim; they can no longer be considered separate actions. (*Palmisano v. Connell* (1989), 179 Ill. App. 3d 1089, 1095.) Thus, the section 2—611 claims in this case must be considered part of the underlying dissolution-of-marriage action. In *Palmisano,* we went on to hold that, absent a special finding pursuant to Supreme Court Rule 304(a) (107 Ill. 2d R. 304(a)), the underlying judgment was not appealable until the section 2—611 claim was resolved. 179 Ill. App. 3d at 1095.

██ In the case at bar, the situation is the reverse of that in *Palmisano*. The section 2—611 claims have been resolved, but there are matters still to be resolved with regard to the underlying action. According to our review of the record, Marla's petition for allocation of attorney fees, which was filed in June 1987, was still pending at the time Frederick filed his notice of appeal. This court has held that there can be no final judgment in a dissolution-of-marriage proceeding if a petition for allocation of attorney fees remains pending. (*In re Marriage of Derning* (1983), 117 Ill. App. 3d 620, 627.) Under *Derning,* there was no final order at the time Frederick filed his notice of appeal.

██ This court only has jurisdiction to review final orders (107 Ill. 2d R. 301) unless the order appealed from falls within one of the exceptions for interlocutory orders set forth in the Supreme Court Rules. (*Renzulli v. Zoning Board of Appeals* (1988), 176 Ill. App. 3d 661, 662.) Since Frederick's initial appeal in this consolidated case was from an order denying an injunction, the exception set forth in Supreme Court Rule 307(a)(1) (107 Ill. 2d R. 307(a)(1)) was applicable. None of the exceptions, however, applies to his appeal from the order granting sanctions pursuant to section 2—611. We must therefore dismiss this appeal for lack of jurisdiction.

Frederick argues that the section 2—611 claim is not directly related to the other matters in the proceeding. If the trial court had made a finding pursuant to Supreme Court Rule 304(a) that there was no just reason to delay enforcement or appeal from the order, his argument might support a conclusion that the section 2—611 claim is a separate claim which is rendered appealable under the rule by inclusion of the aforementioned language in the order. The trial court, however, did not include this language in either of the orders granting sanctions. Although a section 2—611 claim might constitute a separate claim in a dissolution proceeding for Rule 304(a) purposes, the language of section 2—611 makes it clear that it cannot constitute a separate action.

For the reasons stated herein, we affirm the order of the circuit court of McHenry County denying the petition for injunctive relief and dismiss the appeal from the two orders imposing sanctions.

No. 2—88—0317, Affirmed.
No. 2—88—0581, Dismissed.

McLAREN and NASH, JJ., concur.